THE TEXAS COTTON PRESS AND MANUFACTURING CO. v.
THE MECHANICS' FIRE COMPANY.

(Case No. 1314.)

1. FIRE COMPANY — CONTRACT.— An incorporated fire company in a municipal corporation was, on occasions of fire, under the absolute control of the chief engineer, who discharged the company when the fire was subdued. After the company was discharged, the owner of property on which a fire had occurred, employed the company to remain on the premises and do work with the engine in extinguishing the embers of the fire, which could have been done with a few buckets and manual labor. In a suit to recover against the property owner for the extra labor, *held* —

1. The property owner was liable for the value of the extra labor, there being nothing to show that the chief engineer acted in bad faith in discharging or calling off the company from further attention to the fire.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

On the 24th of September, 1878, the Mechanics' Fire Co. brought suit in the district court of Galveston county against the Texas Cotton Press & Manufacturing Co. for $616 for work and labor performed by the company, and services rendered by its engine.

On the 9th of October, 1879, the defendant pleaded among other things: That the plaintiff was a fire company; that the engine mentioned was a fire engine used for extinguishing fires; that the men named in plaintiffs' petition as skilled laborers were firemen, and that the service alleged to have been performed by the fire engine and laborers was in extinguishing a fire on the premises of the Texas Cotton Press & Manufacturing Co. situated within the city limits of the city of Galveston.

That at the time of the fire and when the services were rendered, the plaintiff was a part of, and belonged to, the fire department of the city of Galveston, and the men described by plaintiff as skilled laborers, were at that time firemen of the city of Galveston and belonged to its fire department.

On the 15th of April,. 1880, the case was tried by a jury, who rendered a verdict in favor of the plaintiff for $355.

The evidence disclosed that appellee is a body corporate, created for the purpose of preventing loss by fire, for benevolent purposes, and with authority to acquire property not to exceed $20,000 in value, by donation. Appellant is also a body corporate, with capacity to contract, sue and be sued. In 1875, appellee purchased on credit a steam fire engine, the price being between $5,000 and $6,000, part of which has been paid, and part remained unpaid. The payments made were derived from contributions from the members of the company and from their friends, and also from the earnings of the company in using their engine for pumping out cisterns, vessels, etc.

By agreement with the municipal authorities of Galveston, appellee was attached to the fire department of the city. Under the agreement, appellee placed her fire engine under the orders of the fire department when needed, on the same footing with the city's engines, and the members of the company were subjected to the orders of the fire department. On the other hand, the city agreed to furnish appellee with an engineer, engine horses, driver and repairs when needed. The fire department was composed of volunteer companies, under the absolute control of a chief engineer, who, during fires, had complete authority over the persons and machinery appertaining to the department. Upon an alarm of fire, the department, under standing orders to that effect, went to the place of the fire, and worked there under the direction of the chief engineer until he discharged them, which he did, when in his judgment their further attendance was not required.

When so discharged the members of the department were at liberty to go where they pleased. And the engines were returned to the engine houses to be ready for any other fire that might occur.

Appellant owned and operated large cotton warehouses in Galveston, where large quantities of cotton were stored.

On the night of November 2, 1877, a portion of the cotton stored in appellant's warehouses was set on fire by lightning, and about midnight burst into flames. The fire department of the city turned out and worked on the fire until 7 or 8 o'clock on the following morning, when the flames were subdued, and the chief engineer discharged the department from further attendance. Fire still lurked in the bales of cotton, and in taking out the bales the fire would occasionally blaze up, but could be readily extinguished with buckets of water by a few extra hands. The superintendent of the appellant company employed appellee to stay by the cotton with their engine and do this service while the cotton was being taken out, and promised to pay for the service, which appellee did faithfully from the time the chief engineer discharged the department, until about thirty-two hours afterwards, when the superintendent of appellant discharged appellee from further employment. The services so rendered by the men and engine were reasonably worth the amount recovered, exclusive of the services and material furnished by the city to appellee, and for which appellee made no charge. No price was agreed on for the work. Appellant's superintendent reported to appellant the employment of appellee and recommended payment for the service rendered, but it was refused. The superintendent employed other men during the same time to do similar work with buckets, and these were paid by appellant.

The court charged the jury that firemen working as such to extinguish a conflagration cannot recover for their services nor for the use of their engine, and that a contract for compensation for such services is invalid. But when the conflagration is subdued and there is no longer probable danger, the fire department may be discharged from further attendance, and if the parties whose property has suffered can safely watch what remains and

preserve it against the embers of the fire by a few buckets of water, but do not choose to do so, and employ the firemen to remain longer than their duty requires them, and promise them compensation for so doing, such contract of employment is lawful, and the firemen can recover the reasonable value of their services, and for the use of their engine in guarding and preserving the property, after the necessity for their presence as firemen had ceased.

*Davis & Sayles*, for appellant.— The court erred in refusing to instruct the jury, that a fire company which forms a part of the fire department of the city of Galveston, cannot recover for services rendered in extinguishing a fire within the city limits of the city of Galveston. Davey *v.* Bark Mary Frost, 2 Wood's U. S. C. C. R., 306; City of Decatur *v.* Vermillion, 77 Ill., 315.

*Scott & Levi*, for appellee.

Bonner, Associate Justice.— The two cases cited by appellants, The Cotton Press Company, do not sustain the issue in their behalf, as presented by the record. In that of Davey *v.* Bark Mary Frost, 2 Wood's C. C. R., 306, compensation was refused the fire company, on the ground that, in suppressing the fire, they were strictly in the discharge of their duty, and that the extra services performed by them were not demanded by the master of the vessel, but were expressly prohibited by him.

The case of City of Decatur *v.* Vermillion, 77 Ill., 315, decides that a person who accepts office for a fixed salary cannot legally charge additional compensation for the performance of his official duties.

Under the agreed facts in this case, it appears that the services for which compensation is sought did not necessarily devolve upon the fire company as a part of their duty, as such, but were extra services, which usually

would devolve upon the Cotton Press Company, as bailees, and which reasonably could have been performed by ordinary labor.

Under the rules and regulations governing the fire department of the city, the right to determine when the emergency ceased which called the company into action, was confided to the chief engineer, and when called off by him the plaintiffs were at liberty to disperse.

His order calling off the company in this case was, so far as shown by the testimony, made properly and in good faith, and plaintiffs would doubtless have dispersed, as did the other companies belonging to the department, had it not been for the express contract for their employment in this extra service, made by the superintendent of the Cotton Press Company.

Had the testimony shown that this order of the chief engineer had been made in bad faith, to take advantage of the misfortune of the Cotton Press Company, to improperly coerce them to pay for services which it was the legitimate duty of the fire department to have performed under their general contract with the city, then, on grounds of public policy, the courts should unhesitatingly refuse extra compensation for such services. This, however, is not the case presented by the record.

It being admitted that the services rendered by the men and engine were reasonably worth the amount recovered, we are of opinion, that, under the facts and circumstances of this case, the judgment below should be affirmed.

AFFIRMED.

[Opinion delivered February 8, 1881.]